Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | |
| ) | Bankruptcy Case |
| ROBERT RAYMOND CANCELOSI ) | No. 10-30182-rld7 |
| REBEKAH MALIA CANCELOSI, ) | |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| RICHARD H. WILKES and BEVERLEE J. ) | |
| WILKES, ) | |
| ) | Adv. Proc. No. 10-03099-rld |
| Plaintiffs, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | |
| ROBERT RAYMOND CANCELOSI, III, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On June 24, 2011, I conducted the trial ("Trial") on stipulated facts of the Complaint ("Complaint") of Beverlee J. Wilkes and Richard H. Wilkes ("the Wilkes") to except their claim against debtor Robert Raymond Cancelosi III ("Mr. Cancelosi") from discharge pursuant to §§ 523(a)(4)

Page 1 - MEMORANDUM OPINION

and (19) of the Bankruptcy Code.[1]  Following argument from the parties, I stated oral findings of fact and conclusions of law on the record and found in favor of the Wilkes on their § 523(a)(19) claim and dismissed their § 523(a)(4) claim.  I prepared and entered a judgment ("Judgment") in favor of the Wilkes on June 27, 2011.

On July 11, 2011, Mr. Cancelosi filed Defendant's Post-Judgment Omnibus Motions ("Motion") requesting four types of relief: 1) that the Judgment be altered or amended, or in the alternative, for a new trial pursuant to Civil Rule 59 and Rule 9023; 2) a precautionary motion to confirm the Motion's status as a tolling motion for purposes of extending the time for filing a notice of appeal pursuant to Rule 8002; 3) that enforcement of the Judgment be stayed pending disposition of the Motion pursuant to Civil Rule 62(b) and Rule 7062; and 4) that enforcement of the Judgment be stayed pending appeal, pursuant to Civil Rule 62(d) and Rule 7062.  The Wilkes filed a Response ("Response") to the Motion on July 20, 2011.  I heard argument on the Motion at a hearing ("Hearing") on July 26, 2011, and took determination of the Motion under advisement.

Since the Hearing, I have considered carefully the arguments presented by the parties, the Motion and the Response, the exhibits ("Exhibits") admitted at the Trial, and applicable authorities.  I further take judicial notice of the docket and documents filed in this adversary proceeding ("Adversary Proceeding") and in Mr. Cancelosi's main chapter 7 case, Case No. 10-30182 ("Main Case"), for purposes of

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 2 - MEMORANDUM OPINION

confirming and ascertaining facts not reasonably in dispute. Federal Rule of Evidence 201; <u>In re Butts</u>, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006).

In light of that consideration and review, this Memorandum Opinion sets forth the court's findings and conclusions under Civil Rule 52(a), applicable with respect to the Motion under Rule 7052.

## Factual Background

Although the parties differ substantially in their interpretations of how relevant facts apply in this Adversary Proceeding, the underlying facts are not in dispute.

Mr. Cancelosi and his wife, Rebekah Malia Cancelosi ("Ms. Cancelosi"), filed for relief under chapter 7 of the Bankruptcy Code on January 12, 2010. Main Case Docket No. 1. Prior to the Cancelosis' bankruptcy filing, the Wilkes had initiated an arbitration proceeding ("Arbitration") in 2008 against Mr. Cancelosi, Bret Costelow ("Mr. Costelow"), and Acuity Lending Corp. ("Acuity Lending"), of which Mr. Cancelosi was president and a 50% shareholder, alleging fraud and securities law violations, among other things. <u>See</u> Complaint, Adversary Proceeding Docket No. 1. The deadline to file adversary proceeding complaints to except claims from the Cancelosis' discharge was April 12, 2010. Main Case Docket No. 4. The Wilkes timely filed the Complaint on April 5, 2010 against both Mr. Cancelosi and Ms. Cancelosi.

In the Complaint, after describing the pending Arbitration and the claims asserted therein, the Wilkes requested that their claim be excepted from the Cancelosis' discharge pursuant to §§ 523(a)(4) and

(19).  See Adversary Proceeding Docket No. 1.  Ms. Cancelosi moved to dismiss the Complaint against her for failure to state a claim upon which relief could be granted by motion ("Motion to Dismiss") filed on May 5, 2010.  See Adversary Proceeding Docket No. 6.  I granted the Motion to Dismiss by order entered on May 26, 2010.  See Adversary Proceeding Docket No. 11.  The Wilkes do not contest that ruling.

In the meantime, Mr. Cancelosi filed an answer to the Complaint (see Adversary Proceeding Docket No. 5), and an initial pretrial conference in the Adversary Proceeding was held on May 25, 2010.  See Adversary Proceeding Docket No. 9.  At the initial pretrial conference, after discussing with Ms. Wilkes and counsel for the Cancelosis the most efficient and cost-effective way to proceed to resolve the Adversary Proceeding, I granted relief from stay to allow the Arbitration to proceed and scheduled a further pretrial conference for August 10, 2010.  Id.  On May 28, 2010, I entered an order granting relief from stay to allow the Arbitration to proceed, effective immediately.  See Adversary Proceeding Docket No. 12.

Ultimately, an evidentiary hearing in the Arbitration took place on November 30-December 1, 2010, and the arbitrator's Award ("Award") was issued on January 18, 2011.  See Exhibit A.  In the Award, the arbitrator discussed and decided three claims:

1) <u>Sale of Securities</u>

In the Award, after discussing the nature of the subject transactions, the arbitrator found that all three Respondents (Mr. Cancelosi, Mr. Costelow and Acuity Lending) had sold unregistered securities, with no credible evidence that the subject sales were exempt

Page 4 - MEMORANDUM OPINION

from registration under Oregon's "Blue Sky" laws. The arbitrator further found that the Respondents were "jointly and severally liable for the damages resulting from those sales." See Award, Exhibit A at pp. 1-3.

2) Breach of Fiduciary Duties

While the arbitrator found that the Respondents had breached fiduciary duties, specifically finding that Mr. Cancelosi had "either direct or imputed knowledge" of the subject breaches, no separate damages were proven, and any recoverable amounts would be payable to Acuity Lending rather than to the Wilkes. See Award, Exhibit A at pp. 3-4.

3) Breach of Contract

The arbitrator further found that Mr. Cancelosi was liable on a $160,000 payment guarantee to the Wilkes. See Award, Exhibit A at p. 4.

4) Damages

The arbitrator discussed damages separately. Under ORS 59.115(2), as noted by the arbitrator, the party damaged as a result of a violation of the Oregon securities laws has two recovery options:

> (a) Upon tender of the security, the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments for the payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security; or
> (b) If the purchaser no longer owns the security, damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of interest specified in ORS 82.010 for judgments for the payment of money from the date of disposition.

The arbitrator found that the Wilkes retained the subject securities and were attempting to recover from their disposition in mitigation of their

Page 5 - MEMORANDUM OPINION

damages. See Award, Exhibit A at p. 5.  The Wilkes had claimed damages with respect to their investments in a total amount of $767,353.42 without contradiction from the Respondents.  Accordingly, the arbitrator found that the Wilkes' damages from the Respondents' violations of the Oregon securities laws totaled $767,353.42.  Id. at 5.  The arbitrator noted,

> Prior to entry of judgment the [Wilkes] are required to tender the securities to Respondents in order to recover their damages. Metal Tech Corp. v. Metal Technologies Co., Inc., 74 Or. App. 297, 302 (1985). If they intend to hold the securities, they do so at their own risk and are not entitled to a recovery for the Oregon Securities Law violation.

Id.  The arbitrator further noted, however,

> Since the alternate theory of liability results in <u>damages that are duplicative of the damages resulting from the breach of the securities law, they are included in the final damage award upon a tender</u>. Absent a tender, the alternate liability theory would apply.

Id. (Emphasis added.)

> The following "Award" is short:
>
> For the foregoing reasons, an Award is entered in favor of the [Wilkes] and against the individual Respondents, jointly and severally, in the amount of $767,353.42, plus interest from the date of this Award, conditioned on tendering the securities in question to the Respondents prior to the entry of judgment on this Award.  If the [Wilkes] elect not to tender, an Award will be entered in their favor in the amount of $160,000 against the Respondent Cancelosi.

Id. at 6.

On January 21, 2011, Ms. Wilkes filed a copy of the Award with the court.  See Adversary Proceeding Docket No. 23.  At a further pretrial conference on March 8, 2011, it was noted that no Circuit Court

Page 6 - MEMORANDUM OPINION

judgment yet had been entered confirming the Award, and a schedule for trial on the issue of damages only was discussed. See Adversary Proceeding Docket No. 27. A scheduling order subsequently was entered scheduling the trial for May 25, 2011. See Adversary Proceeding Docket No. 28.

The Trial ultimately was set over to June 24, 2011 to accommodate the Multnomah County Circuit Court's ("Circuit Court") schedule for entry of a judgment confirming the Award. See Adversary Proceeding Docket Nos. 30 and 31. On or about June 10, 2011, the Circuit Court entered a General Judgment and Money Award ("Confirming Judgment"), noting 1) that the Award had been presented to the Circuit Court for confirmation, and 2) that the Wilkes had not tendered the subject securities to the Respondents, and 3) awarding judgment in favor of the Wilkes against Mr. Cancelosi in the amount of $160,000 to bear interest from the date of entry of the Confirming Judgment at the rate of 9% per annum. See Exhibit D at pp. 1-2.

As noted above, the Trial was duly held on June 24, 2011, and after hearing argument from the parties in light of the admitted Exhibits, I dismissed the Wilkes' claim under § 523(a)(4) but found in their favor on their claim under § 523(a)(19). In the Judgment, I formally dismissed the § 523(a)(4) claim and awarded the Wilkes judgment against Mr. Cancelosi excepted from his discharge under § 523(a)(19) in the amount of $160,000 plus 9% interest, as provided in the Confirming Judgment, with the following limitation:

> [T]o the extent that the [Wilkes] recover from the disposition of the subject securities and/or other respondents in the underlying arbitration an amount of

Page 7 - MEMORANDUM OPINION

the $767,353.42 arbitration award that would leave
         less than the judgment of $160,000 plus 9% interest
         owing on the [Wilkes'] claim excepted from [Mr.
         Cancelosi's] discharge, [Mr. Cancelosi] will receive a
         dollar for dollar offset.

Judgment, Adversary Proceeding Docket No. 48 at p. 2.

As noted above, I heard argument on the Motion in light of the Response on July 26, 2011, and took the matter under advisement.

## Jurisdiction

I have core jurisdiction to hear and resolve the Adversary Proceeding generally and the Motion specifically under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (I).

## Preliminary Matters

As noted at the outset, the Motion requests a number of different forms of relief, some of which I addressed at the Hearing. My dispositions as to matters allowing for summary determination are as follows:

A) <u>Precautionary Motion to Extend the Time to File a Notice of Appeal</u>.

Rule 8002(b) provides that,

         If any party makes a timely motion of a type specified
         immediately below, the time for appeal for all parties
         runs from the entry of the order disposing of the last
         such motion outstanding. This provision applies to a
         timely motion: . . .(2) to alter or amend the judgment
         under Rule 9023; (3) for a new trial under Rule 9023 .
         . . .

In fact, the Motion included motions to alter or amend the Judgment or in the alternative, for a new trial under Civil Rule 59 and Rule 9023. The deadline for filing such motions under Rule 9023 is "no later than 14 days after entry of judgment."

Page 8 - MEMORANDUM OPINION

The Judgment was entered on June 27, 2011. The Motion was filed on July 11, 2011, 14 days later. I find that the Motion was filed timely for purposes of tolling the running of the 14-day period to file a notice of appeal under Rule 8002(a). Accordingly, the time to file a notice of appeal does not begin to run until I have entered an order fully resolving the Motion. Since Rule 8002(b) so provides, no further order is required to implement its tolling effect.

B) <u>Motion for Stay of Proceedings to Enforce the Judgment Pending Disposition of the Motion</u>.

In order to maintain the status quo while I considered the Motion, at the Hearing, I granted Mr. Cancelosi's motion to stay enforcement of the Judgment pending a decision on the Motion, pursuant to Civil Rule 62(b), as applicable under Rule 7062. I entered an implementing stay order on July 28, 2011. In light of the limited period contemplated between the Hearing and my entry of the under advisement disposition of the Motion, I did not require, and I do not require Mr. Cancelosi to put up any security or bond during the period of the stay, which will terminate upon entry of an order fully deciding the Motion.

C) <u>Motion for Stay Pending Appeal without Bond</u>.

Since the decision of any party to appeal the Judgment and/or any order deciding the Motion will be made only after I have decided the Motion, the motion for stay pending appeal pursuant to Civil Rule 62(d) and Rule 7062 is premature, and I decline to consider it at this time.

D) <u>Motion for New Trial</u>.

At the hearing, I confirmed with the parties that neither side

had any additional exhibits to submit, and neither party suggested that additional testimony was required or appropriate. Accordingly, the issues raised by the Motion concerning altering or amending the Judgment can be resolved as a matter of law, based on the evidence presented through the already-admitted Exhibits. In these circumstances, I will deny the motion for new trial and will rely on the evidentiary record from the Trial in analyzing and deciding the remaining issues presented for my consideration in the Motion.

The unresolved issues presented by the Motion and the Response are dealt with in the following Discussion.

## Discussion

1) Standards for Deciding a Motion to Alter or Amend the Judgment

As recognized by Mr. Cancelosi, a motion to alter or amend a judgment "should not be granted absent highly unusual circumstances, unless the . . . [trial] court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999) (quoting 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1993), emphasis added by McDowell). See Brown v. Wright, 588 F.2d 708, 710 (9th Cir. 1978) ("There are three grounds for granting new trials in court-tried actions under [Civil] Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence."); Ankeny v. Meyer (In re Ankeny), 184 B.R. 64, 73 (9th Cir. BAP 1995).

In the Motion, Mr. Cancelosi does not contend that he has any

Page 10 - MEMORANDUM OPINION

"newly discovered evidence" to present that would justify altering or amending the Judgment. Rather, Mr. Cancelosi argues that the Judgment is infected with "clear error," without necessarily specifying whether the error is factual, a matter of law, or both. I disagree that the Judgment is flawed by any clear error of fact or law for the following reasons.

2) Exceptions to Discharge and § 523(a)(19)

Mr. Cancelosi argues that I erred in not giving sufficient deference to the principle that exceptions to discharge should be construed narrowly. I recognize that the statutory exceptions to discharge generally are to be construed strictly in favor of the debtor and strictly against those seeking to except debts from the debtor's discharge. See, e.g., Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992). However, application of that principle is leavened by the relatively lenient preponderance of the evidence burden of proof standard applying with respect to such claims since the Supreme Court's decision in Grogan v. Garner, 498 U.S. 279 (1991), and by the terms of the particular exception to discharge invoked.

Section 523(a)(19) provides an exception to discharge for claims resulting from violations of federal and/or state securities laws.[2] It was adopted as part of the Sarbanes-Oxley Act of 2002

---

[2] Section 523(a)(19) specifically provides a chapter 7 discharge does not discharge an individual debtor from any debt that

(A) is for–(i) the violation of any of the Federal securities laws (as that term is defined in Section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or (ii) common law fraud, deceit, or

(continued...)

Page 11 - MEMORANDUM OPINION

("Sarbanes-Oxley"), the purpose of which is "to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to the securities laws, and for other purposes." Pub. L. No. 107-204, 116 Stat. 745 (2002).

Title VIII of Sarbanes-Oxley is entitled "The Corporate and Criminal Fraud Accountability Act of 2002" (the "Accountability Act"). The purposes of the Accountability Act are:

> To provide for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations, <u>to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy</u>, to protect whistleblowers who report fraud from retaliation by their employers, and for other purposes.

S. Rep. No. 107-146, at 2 (2002) (emphasis added). Section 803 of the Accountability Act added § 523(a)(19) to the Bankruptcy Code to "[a]mend the Bankruptcy Code to make judgments and settlements based upon securities law violations nondischargeable, protecting victims' ability to recover their losses." 148 Cong. Rec. S11787 (daily ed. March 12, 2002) (statement of Senator Leahy). The related Senate Committee Report states:

---

²(...continued)
manipulation in connection with the purchase or sale of any security; and
(B) results, before, on, or after the date on which the petition was filed, from–(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; (ii) any settlement agreement entered into by the debtor; or (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

Page 12 - MEMORANDUM OPINION

> Current bankruptcy law may permit such wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to hold accountable those who violate securities laws after a government unit or private suit results in a judgment or settlement against the wrongdoer.

S. Rep. No. 107-146 (2002).

The legislative history of § 523(a)(19) emphasizes its remedial purpose and intended broad application. See, e.g., Smith v. Gibbons (In re Gibbons), 289 B.R. 588, 593 (Bankr. S.D.N.Y. 2003). In his section by section analysis of the Accountability Act, Senator Leahy stated: "[Section 523(a)(19)] is meant to prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible." 148 Cong. Rec. S7418 (daily ed. July 26, 2002) (statement of Senator Leahy). His section by section analysis was adopted as legislative history for the Accountability Act "in order to provide guidance in the legal interpretation of these provisions of Title VIII of H.R. 2673." Id.

As relevant to the Complaint in this Adversary Proceeding, the Wilkes bore the burden of proof to establish each of two elements by a preponderance of the evidence: 1) their claim was for a debt resulting from a violation(s) of state securities laws; and 2) the subject debt resulted from a "judgment, order, consent order or decree in a federal or state judicial or administrative proceeding or any settlement agreement entered by the debtor or any court or administrative order for the payment of damages, a fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost or other payment owed by the

Page 13 - MEMORANDUM OPINION

debtor." Peterman v. Whitcomb (In re Whitcomb), 303 B.R. 806, 810 (Bankr. N.D. Ill. 2004). See also Mollago v. Tills (In re Tills), 419 B.R. 444, 451 (Bankr. S.D. Cal. 2009); Hodges v. Buzzeo (In re Buzzeo), 365 B.R. 578, 582 (Bankr. W.D. Pa. 2007). While Mr. Cancelosi does not contest the finding of fact in the Award that Mr. Cancelosi and the other Respondents violated Oregon's securities laws by selling unregistered securities in nonexempt transactions, Mr. Cancelosi argues that I clearly erred in my interpretation and application of the Confirming Judgment.

3) The Confirming Judgment is a General Judgment Not Limited by its Terms to Breach of Contract

Mr. Cancelosi argues both frequently and fervently that the Judgment is in error because the underlying Confirming Judgment is "only for breach of contract." See Motion, Adversary Proceeding Docket No. 52 at pp. 3, 4, 5 and 7. The fundamental problem with that argument is it is inconsistent with the terms of the Confirming Judgment.

The title of the Confirming Judgment is "General Judgment and Money Award." The Confirming Judgment notes that the Award had been presented to the Circuit Court for confirmation. The Confirming Judgment further notes that the Wilkes did not tender the securities that were the subject of the Arbitration to the Respondents. The Confirming Judgment then recognizes that the Wilkes "should have and recover judgment against" Mr. Cancelosi, and it awards a judgment in the amount of $160,000 to the Wilkes against Mr. Cancelosi with interest at 9% from the date of entry of the Confirming Judgment. The Confirming Judgment is a general money judgment that never mentions "breach of contract" at any point.

It is Mr. Cancelosi rather than this court who then "goes behind" the Confirming Judgment to the findings of the arbitrator in the Award to link the $160,000 damages amount to the arbitrator's breach of contract findings.[3] However, in doing so, Mr. Cancelosi runs straight into the arbitrator's further finding that "the alternate theory of liability results in damages that are duplicative of the damages resulting from the breach of the securities law." See Exhibit A at p. 5. None of the arbitrator's findings in the Award are repudiated in the Confirming Judgment.

Section 523(a)(19) provides a claim for relief under federal, not state, law to except a debt from a debtor's discharge. Analyzing the claim as such is appropriate since Mr. Cancelosi seeks to discharge the Confirming Judgment debt as a breach of contract claim, a remedy that would not be available to him under Oregon state law.

Under § 101(12), the term "debt" is defined as "liability on a claim." The debt in this case arises from the Confirming Judgment awarding a general judgment to the Wilkes of $160,000 plus 9% interest against Mr. Cancelosi. The Confirming Judgment does not state that the

---

[3] Mr. Cancelosi also argues that the Wilkes recognized that the Confirming Judgment "was found . . . in Breach of Contract," citing the Wilkes' Motion to Allow Exception from Discharge, Adversary Proceeding Docket No. 38 at p. 1, ¶ 2. I note that the Wilkes have appeared pro se throughout the Adversary Proceeding, and I interpret their statements in pleadings as those of laymen. In the Ninth Circuit, pleadings from pro se parties are to be construed liberally. See Beaty v. Schiro, 554 F.3d 780, 783 (9th Cir. 2004). I further note that in the pleadings included in Adversary Proceeding Docket No. 38, the Wilkes clearly argue that any claim for breach of contract is tied to their claims with respect to sales of securities. Mr. Cancelosi does not argue that the Wilkes are estopped from pursuing their claim under § 523(a)(19) by any admissions in their pleadings.

Page 15 - MEMORANDUM OPINION

money judgment award is based solely on a breach of contract claim. In light of the arbitrator's finding that the Wilkes' breach of guarantee damages were duplicative of a portion of the Wilkes' breach of securities law damages, the Circuit Court's failure to include such a limitation in the Confirming Judgment is appropriate.

Particularly relevant to the circumstances I face in this case is the decision in <u>Voss v. Pujdak (In re Pujdak)</u>, ___ B.R. ___, 2011 WL 2619506 (Bankr. D.S.C. June 30, 2011). In <u>Pujdak</u>, the Greenville County, South Carolina Court of Common Pleas ("Court") entered a judgment in favor of the plaintiff after imposing terminating sanctions for discovery abuses on the defendants. <u>Id.</u> at *1. In its findings, the Court found that the defendants had caused damages to the plaintiff in the amount of $41,541.96 plus $1,288.72 (a total of $42,830.68) based on, among other things, the defendants' violations of the SC Securities Act, SC Code 35-1-509, and the SC Unfair Trade Practices Act ("SCUTPA"). <u>Id.</u> at *2.

> However, in terms of recovery, Plaintiff can only recover under one theory of damages. Plaintiff elects recovery under SCUTPA. Under the SCUTPA claim, specifically SC Code 39-5-140, Plaintiff is entitled to a trebling of damages, and costs and attorney fees. Damages are awarded in the amount of $128,492.04.

<u>Id.</u>

The Pujdaks subsequently filed for relief under chapter 7, and the plaintiff filed an adversary proceeding against them under §§ 523(a)(2)(A) and (a)(19). <u>Id.</u> Ultimately, the bankruptcy court excepted the Pujdaks' debt to the plaintiff from discharge under § 523(a)(19) to the extent of $42,830.68 (including the amount of damages not trebled) in spite of the plaintiff's election of her remedy under

Page 16 - MEMORANDUM OPINION

SCUTPA in the Court's judgment.

Based on the foregoing analysis, I conclude that I committed no "clear error" in excepting the Wilkes' claim in the amount of $160,000 plus 9% interest from Mr. Cancelosi's discharge pursuant to § 523(a)(19), based on the Award and the Confirming Judgment.

4) <u>Appropriateness of the Offset Provision</u>

If any clarification on the point needs to be made, the Judgment excepts only the $160,000 plus 9% interest provided for in the Confirming Judgment from Mr. Cancelosi's discharge under § 523(a)(19). Mr. Cancelosi complains that I "alluded to" the damages of $767,353.42 the arbitrator found for securities law violations in the Judgment. My reference was for one purpose only: The Wilkes allegedly lost $767,353.42, based on the securities law violations of the Arbitration Respondents, as found by the arbitrator in the Award, subject to potential recoveries from disposition of the subject securities and recoveries from the various Respondents. I included the offset provision in the Judgment so that Mr. Cancelosi would be entitled explicitly to a dollar for dollar offset against the $160,000 plus 9% interest nondischargeable debt to the extent that the Wilkes' recoveries from the disposition of subject securities and recoveries from Respondents other than Mr. Cancelosi reduce their overall losses from their securities transactions with the Respondents to less than the $160,000 plus 9% interest judgment debt excepted from Mr. Cancelosi's discharge.[4] If I

---

[4] The record reflects that Acuity Lending is in receivership, and the Wilkes may recover something when net receivership proceeds from
(continued...)

Page 17 - MEMORANDUM OPINION

erred in giving that equitable potential benefit to Mr. Cancelosi in the Judgment, I expect that I will be so instructed following an appeal.

As for Mr. Cancelosi's argument that an offset should be provided for any recovery by the Wilkes on Loan ALCO61060 specifically, as Mr. Cancelosi's guarantee against loss only applied with regard to Loan ALCO61060, Mr. Cancelosi has never submitted documentation for Loan ALCO61060 or his guarantee for admission as evidence in this Adversary Proceeding. Consequently, I have no basis in the record to evaluate his suggestion for offset and decline to do so now.

### Conclusion

Based on the foregoing review and analysis of the record and relevant authorities, I will deny Mr. Cancelosi's Motion to the extent he seeks alteration or amendment of the Judgment. A separate order will be entered contemporaneously deciding all open issues raised in the Motion.

###

cc: Richard J. Wilkes
　　 Ann K. Chapman

---

[4](...continued)
liquidation are distributed.

Page 18 - MEMORANDUM OPINION